In the Matter of ALBERT J. WATSON et al., Respondents, against JOSEPH D. McGOLDRICK, as Comptroller of the City of New York, Appellant.

Argued February 26, 1941; decided June 12, 1941.

*William C. Chanler,* Corporation Counsel (*Edward J. McGratty, Jr.,* and *Paxton Blair* of counsel), for appellant. The determination of the Comptroller that petitioners have received not less than the prevailing rate of wages paid to commensurately employed motor grader operators in private employment is amply supported by the evidence. (*McNulty* v. *City of New York,* 238 N. Y. 29; *Wood* v. *City of New York,* 274 N. Y. 155; *Manning* v. *City of New York,* 150 Misc. Rep. 292; *Austin* v. *City of New York,* 258 N. Y. 113; *McCaffrey* v. *State of New York,* 259 N. Y. 159.)

*Samuel D. Smoleff* for Citizens Union of the City of New York, *amicus curiæ.* There is no evidence of a prevailing rate in private industry for work comparable to that which the city offers. The hourly rate in private

industry is the rate for irregular work, and is merely evidence to be considered in connection with other relevant factors in ascertaining a proper rate to be paid to a different class of employees, namely, those who have regular work. (*Matter of New York Title & Mortgage Co.*, 277 N. Y. 66; *Heiman* v. *Bishop*, 272 N. Y. 83; *Long Island R. R. Co.* v. *Dept. of Labor*, 256 N. Y. 498; *Metropolitan Water District* v. *Whitsett*, 215 Cal. 400; *Sheldon* v. *Metro-Goldwyn Pictures Corp.*, 309 U. S. 390; *Matter of Board of Water Supply of New York*, 277 N. Y. 452; *Austin* v. *City of New York*, 258 N. Y. 113.)

*Harold Riegelman, H. H. Nordlinger* and *Jacob M. Dinnes* for Citizens Budget Commission, Inc., *amicus curiæ.* On the evidence, the Comptroller was authorized to find that petitioners received not less than the prevailing rate of wages for similar private employment. (*Wood* v. *City of New York*, 274 N. Y. 155; *People* v. *Ryan*, 274 N. Y. 149; *Surace* v. *Danna*, 248 N. Y. 18; *City Bank F. T. Co.* v. *New York C. R. R. Co.*, 253 N. Y. 49; *People* v. *Santoro*, 229 N. Y. 277; *People ex rel. Hallock* v. *Hennessy*, 205 N. Y. 301; *People ex rel. Frost* v. *Wilson*, 62 N. Y. 186; *Matter of Gaston* v. *Taylor*, 274 N. Y. 359; *McCaffrey* v. *State of New York*, 259 N. Y. 159; *People ex rel. Rolf* v. *Coler*, 58 App. Div. 347; *Matter of Niagara Falls P. Co.* v. *Water P. & C. Comm.*, 267 N. Y. 265; *People ex rel. Freeborn & Co.* v. *Graves*, 257 App. Div. 587; *People ex rel. Sweeney* v. *Sturgis*, 78 App. Div. 460; *Bock* v. *City of New York*, 31 Misc. Rep. 55.)

*Cornelius Bregoff, Thomas F. McAndrews* and *S. Earl Levene* for respondents. The findings of the Comptroller are based on an erroneous theory of comparison and his determination is contrary to the law and against the weight of evidence. (*Matter of Gaston* v. *Taylor*, 274 N. Y. 359; *Austin* v. *City of New York*, 258 N. Y. 113; *McNulty* v. *City of New York*, 238 N. Y. 29; *Campbell* v. *City of New York*, 244 N. Y. 317; *Matter of Metropolitan Life Ins. Co.* v. *Boland*, 281 N. Y. 357; *Fontheim* v. *Third Ave. Ry. Co.*,

281 N. Y. 392; *Matter of Wingate* v. *McGoldrick*, 279 N. Y. 246.)

*Leonard M. Wallstein, Jr.*, and *Leonard M. Wallstein* for Competitive Civil Service Electricians Association of the City of New York, *amicus curiæ*. The Comptroller's determination, based upon an unauthorized definition of the prevailing rate of wage, improperly disregarded rates of wage paid in employment which he deemed to be impermanent and temporary. (*McNulty* v. *City of New York*, 238 N. Y. 29; *McAvoy* v. *City of New York*, 52 App. Div. 485; 166 N. Y. 588; *Campbell* v. *City of New York*, 244 N. Y. 317; *Matter of Metropolitan Life Ins. Co.* v. *Boland*, 281 N. Y. 357; *Fontheim* v. *Third Avenue Ry. Co.*, 281 N. Y. 392.)

LEHMAN, Ch. J. The petitioners are employed by the city of New York, under the civil service title of motor grader operators, to perform manual labor upon its public works. They and other persons employed by the city under that title are paid at the rate of seven dollars and fifty cents per day. The statute provides that the wages to be paid to them for a legal day's work shall be not less than the prevailing rate for a day's work " in the same trade or occupation " and in the same locality. Claiming that the wages they are receiving are less than this prevailing rate of wages, the petitioners instituted proceedings in accordance with section 220 of the Labor Law (Cons. Laws, ch. 31), to have the prevailing rate fixed by the Comptroller and paid to them. After hearing and investigation the Comptroller " Determined, that the claims or complaints herein are hereby dismissed for lack of any evidence that the complainant Motor Grader Operators have received less than the prevailing rate of wages paid to commensurately employed Motor Grader Operators in private employment."

The petitioners then brought proceedings under article 78 of the Civil Practice Act to review the determination of the Comptroller. The Appellate Division held by a

closely divided court that facts proven or stipulated or conceded " would seem to require a determination that the prevailing rate of wages to be paid to the petitioners shall be equivalent to one dollar and twenty-five cents per hour or ten dollars per day," but that in fixing such equivalence " the comptroller may properly consider the pension benefits and free vacations received by the petitioners " (260 App. Div. 77, 78). Accordingly an order was entered in the Appellate Division " that the determination of the Comptroller herein be and the same hereby is annulled with $20.00 costs and disbursements to the petitioners, and the proceeding is herewith remitted to the Comptroller for determination in accordance with the opinion of the Court herein."

In granting leave to the city to appeal to this court the Appellate Division has certified two questions:

" 1. Did the Comptroller err in dismissing the claims or complaints of the complainant Motor Grader Operators for lack of any evidence that the said complainants have received less than the prevailing rate of wages paid to commensurately employed Motor Grader Operators in private employment?

" 2. May the Comptroller in arriving at a determination of prevailing rate for a legal day's work take into consideration annual vacations with pay and membership in the New York City Retirement System? "

The city employs thirty-one men under the civil service title of motor grader operator. They work on the average two hundred and fifty days a year and receive daily wages for those days. As the title of their position indicates they operate a " motor grader " which according to testimony produced by the petitioners " is a piece of road equipment used in maintenance work and also new work — that is on road work. It's — the machine is equipped with a scraping blade and scarifying apparatus. The scarifying apparatus is used in ripping up hard roads; and the blade part of the machine is used for levelling off and grading and scraping and spreading materials. For instance, stone roads we

spread stone, ash roads we spread ashes. It's used in snow work, to plow snow with these types of machines. Some of our graders are equipped with what we call drift plows for snow work. That's an extra plow attached to the machine of a scarifier unit; it's used for plowing snow."

At the trial the petitioners furnished a list of eighteen contractors who in 1938 employed thirty-seven motor grader operators and it was stipulated or conceded that these men " constitute a majority of the workmen, laborers and mechanics engaged in the trade or occupation of Motor Grader Operators employed within the City of New York *exclusive of those similarly employed by the City of New York.*" It was further stipulated that " the prevailing rate of wages paid to Motor Grader Operators engaged in the *building or construction field* is $1.25 per hour for an eight hour day and forty hour week." (Italics are mine.) Thus it conclusively appeared that the daily wages paid to motor grader operators in city employ is less than the prevailing rate of wages paid to motor grader operators within the city of New York employed by contractors in the building or construction field and exclusive of those similarly employed by the city. It is not disputed that their duties are similar and the Appellate Division has held that it follows that motor grader operators in city employ are entitled to receive wages equal to the prevailing rate paid to the motor grader operators in private employ.

The correctness of that conclusion depends primarily upon the question whether the wages paid to thirty-seven persons in the building or construction field who are employed to operate motor graders by contractors, establishes the prevailing rate of those with similar duties who are employed by the city to operate similar equipment used for road building and for road maintenance including snow removal. The Comptroller has held that difference in the nature and condition of the employment of motor grader operators employed by contractors puts them in a different trade or occupation or renders comparison impossible. The survey or investigation conducted by the Comptroller

disclosed that the thirty-seven men in private employ worked, on the average, only one hundred and three days a year. The city employees who are employed on an average for 250 days, therefore, receive a much larger amount for the work done during the year and the thirty-one city employees work more hours than the thirty-seven persons in private employ who receive higher daily wages, but who work fewer days. The city urges that economic security and the larger annual income of men in steady employ throughout the year should be reflected in difference of daily wages. The statute, however, permits no such differentiation.

The question, however, remains whether those in occasional employment in the building and construction field are engaged in the " same trade or occupation," within the meaning of the statute, as the city employees, for that is the statutory test of whether the same rate of wages must in this case be paid. They all operate equipment used in " road work," but in the city of New York there is little " road work " outside of city employ. The work done by the thirty-seven men in private employ was in large part due to extraordinary projects like the World's Fair and a new aviation field. Moreover, the Comptroller has found that the employees of the city alone perform road maintenance and snow removal work. Differentiation must be based upon a substantial ground. Obviously it may not be used for the purpose of thwarting the statutory purpose, but differentiation of " trade or occupation " within the meaning of the statute where workmen perform similar function and similar work, but in different fields and under different conditions and receive wages at different rates may be reasonable. Indeed, without such differentiation application of the remedial provisions of the statute would at times be impractical if not impossible.

In this case all motor grader operators are, according to the report and survey made by the Bureau of Investigation of the Comptroller's office, members of the International Union of Operating Engineers of Local No. 14 and 14-A, and receive the union rate of wage. It is said that the

unions themselves often differentiate in regard to wage scales of men employed for similar work, but in different fields· where there is variation between the steadiness of work which can be obtained in the respective fields and perhaps other differences. Evidently where such differentiation is made by unions in trades and occupations where the union rates constitute the prevailing rate the Comptroller, in determining the prevailing rates of pay which must be applied in accordance with the statute, may, at times must, recognize that difference in the field in which work is performed — the nature of the activities of the employer — divides workers performing similar work into different " trades and occupations " within the meaning of the statute.

We have not overlooked that there is only one union rate for motor grader operators, but all the members of the union work in the same field and employment in that field is seldom steady. We point out only that union rates for similar work do vary at times in different fields of activities and at least in such cases the prevailing rate of pay in one field may furnish no reasonable basis for determination of the wages to which persons doing similar work in a different field are entitled under the statute. Then the term " trade or occupation " as used in the statute must be given a narrower construction than it might have in other context.

The Comptroller erred, as we have said, in holding that under the statute the prevailing rate of pay of motor grader operators in private employ is not comparable with the wages of operators in city employ because of the difference in respect to permanency and continuity of employment and other benefits arising from employment by the city. Difference " in respect to permanency and continuity of employment " is we repeat irrelevant where employment is in the same trade and occupation, but where work *in one field* is steady and work *in another field* intermittent or seasonal or occasional and men performing the same kind of work in one field cannot at will obtain work in the other field and where real differences in conditions of employment and in

the scope of activities in the two fields is reflected in different wage scales, then it may become a question of fact whether persons employed to do similar work but in different fields are in fact engaged in the same " trade or occupation."

There is suggestion in the evidence and survey that city employees alone are engaged in road *maintenance* including snow removal, but that is a matter which received little attention. There may be sufficient in the record to justify a finding that the thirty-seven motor grader operators in private employ are engaged in a different trade or occupation from those in city employ, but even if the Comptroller's dismissal of the claims of the petitioners " for lack of any evidence " could be construed as containing an implied finding of such fact, the Appellate Division's reversal would still be justified for even then the determination of the Comptroller would not be based upon full investigation and consideration of the decisive questions.

The order of the Appellate Division should be modified to provide that the matter be remitted to the Comptroller for a new determination in accordance with these rules, and as so modified affirmed, without costs, and the first question certified should be answered in the affirmative. We do not answer the second question because the petitioners have taken no appeal and the question is not decisive of the appeal taken by the city.

LOUGHRAN, FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Ordered accordingly.