Van Voorhis, J.
(dissenting). This is a proceeding pursuant to article 78 of the Civil Practice Act to review a determination of the city comptroller fixing the prevailing rate of wages for maintenance men employed by the city.
Pursuant to section 220 of the Labor Law, the petitioners filed complaints with the comptroller demanding that they be paid the prevailing rate of wage to which they were entitled. As required by law, the comptroller made a survey and investigation which resulted in a determination fixing petitioners ’ hourly wage rate for the year 1942, at seventy-two cents. The rate for each of the subsequent years was scaled upwards, with a maximum of $1.16 per hour for the final year 1947.
The determination is attacked by the petitioning employees on the ground that the survey upon which it is based excluded maintenance men employed in buildings owned by private transportation companies, and erroneously included maintenance men employed in private residential buildings. Petitioners also contend that the comptroller erred in failing to accord to certain skilled workmen employed in the city colleges, such as carpenters or plumbers, the prevailing rates of pay for the skilled work that they do and were hired to perform.
The prevailing rate of wage which the comptroller is to determine pursuant to the statute (§ 220, subd. 5, par. a) is 11 the rate of wage paid in the locality * * * to the majority of workmen, laborers or mechanics in the same trade or occupation.” The comptroller took into consideration maintenance men employed in the buildings owned by insurance companies, the Consolidated Edison Company, and the like, but refused to take into consideration maintenance men employed by transportation companies. His refusal to consider such employees was based on the authority of Matter of Watson v. McGoldrick (286 N. Y. 47) and Matter of Hoof v. McGoldrick (295 N. Y. *348 214). In the Hoof case the court held that the wage paid in private employ, for otherwise similar work, was not to be considered where the work of the private employee subjected him to a greater degree of danger or hazard. The evidence taken by the comptroller herein does not disclose whether the maintenance men employed by transportation companies in the maintenance of their buildings, are subject to greater hazards than the petitioners, who work on buildings owned by Hew York City. It does not appear what are the duties of maintenance men in the employ of transportation companies, or whether or not they are subjected to greater hazards from moving vehicles, or other causes, than in the case of city maintenance men. The comptroller justified his position on the ground that the earnings of employees could not be considered if their work was related to transportation. That is not the correct test. The controlling factor is whether the employee does comparable work, under comparable conditions. If that be so, then the éarnings of such private maintenance men should be considered, otherwise not.
The record presents a similar difficulty with respect to the contention of petitioners as to the prevailing rates of pay for what is said to be skilled work, performed by some of them in the maintenance of public structures, particularly in city colleges. The record does not show what types of work the various petitioners perform. Some of them contend that they are carpenters, plumbers, steamfitters, electricians, and so forth, and that, as such, they should be paid the prevailing rates of wage in Hew York City which are paid to such skilled workmen, determined by what is received by “ the majority of workmen, laborers or mechanics in the same trade or occupation ” (Labor Law, § 220, subd. 5, par. a). The comptroller has ruled that inasmuch as the Civil Service Commission has classified all of them as “ Maintenance Men ”, they all belong to one trade or occupation regardless of the nature of the particular service which they respectively perform. Such procedure would be correct if the civil service grouping corresponds to employees actually engaged in the same trade or occupation (Matter of Watson v. McGoldrick, 286 N. Y. 47), but the statutory mandate to pay the prevailing wage to those in the same trade or occupation would not be satisfied by paying to them a uniform rate, if they be in reality engaged in different trades or occupations. It may well be that the comptroller should proceed with caution in determining that an employee who has been classified by the Civil Service Commission as a maintenance man is in reality a skilled workman, but
*349 the requirement of section 220 of the Labor Law could not be avoided by a civil service classification grouping them all as one, if, in fact, their trades or occupations are different, and subject to different prevailing rates of wage. The work which they actually perform should govern (see Bressler v. Board of Higher Education of City of N. Y., 298 N. Y. 112; Matter of Byrnes v. Windels, 265 N. Y. 403). The wages paid to skilled workmen would not enter into a determination by the comptroller of what these maintenance men should be paid, except in relation to fixing the wages of such of them, if any, as possess the full qualifications of such skilled workmen, and devote their time to the performance of work pertaining to such skilled trades. It would seem that some carpentry, plumbing, steamfitting and electrical work, for illustration, must be required in the maintenance of such public buildings. The record does not show whether work of that character is let out to workmen skilled in these lines, or whether the city has those types of skilled workmen regularly employed on its staff of maintenance men. Evidence should be taken on a rehearing to determine whether some of the maintenance men are thus qualified, and whether they do regularly perform such skilled work, which is not clear from the present record.
The comptroller also included in his survey the earnings of maintenance men employed in apartment houses. This was improper. The petitioners here held the title of maintenance men. The duties of maintenance men, as set forth in the notice of examination issued by the Municipal Civil Service Commission in 1944, relate to ‘ ‘ the routine maintenance, operation and repair of public buildings, institutions, schools and other plants operated by The City of New York; perform related work. ’ ’ The comptroller considered apartment house maintenance men, on the ground that the term “ public buildings and institutions ”, as used in the classification, comprehends properties of the city which are residential in character, such as hospitals, houses of . the aged and nurses residences. Such buildings cannot be compared to apartment houses. There is no landlord-tenant relationship, and the character and degree of the work required in those institutions would differ from that required in apartment houses. Private residential properties, therefore, should have been excluded.
The determination of the city comptroller under review should be annulled, with one bill of $50 costs and disbursements to the petitioners, and the proceeding remitted to the comptroller for
*350 further proceedings in order to eliminate as an element in determining the rate or rates of pay for petitioners the wages of maintenance men in private apartment houses, to ascertain whether or not the rates of pay of maintenance men employed by transportation companies are comparable, and should be considered, and to ascertain and determine the nature of the work performed by and the qualifications of those of the petitioners claiming to be duly qualified to engage in skilled trades and to be performing such work, and the appropriate rate or rates of pay applicable to them.
Dore and Shientag, JJ., concur with Cata, a han, J.; Van Voorhis, J., dissents in opinion, in which Glennon, J., concurs.
Determination confirmed, with one bill of $50 costs and disbursements to respondent. Settle order on notice.