In the Matter of WALTER J. FLANNERY et al., Appellants, against LAZARUS JOSEPH, as Comptroller of the City of New York, Respondent.

In the Matter of ROLANDO S. MALERBA et al., Appellants, against LAZARUS JOSEPH, as Comptroller of the City of New York, Respondent.

Argued November 16, 1949; decided December 29, 1949.

*T. Robert Gabrielli* for Walter J. Flannery and others, petitioners-appellants. I. The survey upon which the determination is based is erroneous in that the comptroller specifically excluded maintenance men employed in buildings owned by various private transportation companies. II. The comptroller erred when he failed and refused to accord to certain maintenance men employed in the city colleges the rate of pay for the skilled work that they were performing and were hired to perform. III. The comptroller erred in including in his survey maintenance men employed in private residential buildings for two reasons since (1) they are not residential building maintenance men — residential building maintenance men are a different title and the subject matter of a different proceeding, and (2) even if it is held that maintenance men employed in private residential buildings are comparably employed to these

petitioners, the failure to compute the tips received by maintenance men in private residential buildings resulted in an untrue reflection of their earnings requiring their exclusion from the survey. (*Matter of Giannettino* v. *McGoldrick,* 295 N. Y. 208; *Matter of Sloat* v. *Rochester Taxicab Co.,* 177 App. Div. 57, 221 N. Y. 491; *Matter of Bryant* v. *Pullman Co.,* 188 App. Div. 311, 228 N. Y. 579; *Matter of Begendorf* v. *Swift & Co.,* 193 App. Div. 404; *Kadison* v. *Gottlieb,* 233 N. Y. S. 485.)

*Samuel Resnicoff* for Rolando S. Malerba and others, petitioners-appellants. I. The refusal and failure of the comptroller to include in his survey the rate of pay paid maintenance men by private bus and transit companies constituted error. II. It was incumbent upon the comptroller to first ascertain and determine the nature of the work performed by petitioners and then include in his survey the rate of wages paid by private industry to their employees performing similar work. (*Matter of Byrnes* v. *Windels,* 265 N. Y. 403; *Bressler* v. *Board of Higher Educ. of City of N. Y.,* 298 N. Y. 112.)

*David A. Savage* and *Donald A. Savage* for a group of maintenance men employed by the City of New York, *amicus curiæ,* in support of petitioners-appellants' position. I. The comptroller should not have included in his survey the wages of employees working in apartment houses. II. The refusal of the comptroller to include in the survey the wages paid to skilled mechanics performing maintenance work in privately owned buildings was error. (*Wood* v. *City of New York,* 274 N. Y. 155.)

*John P. McGrath, Corporation Counsel (Howard C. Fischbach* and *Seymour B. Quel* of counsel), for respondent. I. The comptroller's determination was valid and was supported by the survey and the evidence. The comptroller properly excluded from his survey data relating to maintenance men employed by private transportation companies on the ground that city-employed maintenance men are not engaged in that field of work. (*Matter of Watson* v. *McGoldrick,* 286 N. Y. 47; *Matter of Hoof* v. *McGoldrick,* 295 N. Y. 214.) II. The city is obliged to pay a prevailing rate of wages to its maintenance men only for services rendered within the municipal civil service commission's prescribed duties for that position. (*Matter*

of *Kearns* v. *Board of Educ. of City of N. Y.,* 279 N. Y. 61; *Stetson* v. *Board of Educ. of City of N. Y.,* 165 App. Div. 476, 218 N. Y. 301; *Matter of Orsechowsky,* 60 N. Y. St. Dept. Rep. 205; *Matter of Morlan,* 65 N. Y. St. Dept. Rep. 52.) III. The comptroller was justified in including in his calculations wage data which embraced privately employed maintenance men performing services in apartment or residential structures since petitioners render similar services. (*Matter of Heaney* v. *McGoldrick,* 286 N. Y. 38.) IV. Apart from petitioners' concessions that tips and gratuities allegedly received by private employees are speculative and not ascertainable, the Labor Law makes no provision for the inclusion thereof into the basic wage so as to entitle city employees to comparable emoluments.

BROMLEY, J. Appellants are a group of maintenance men employed under that civil service title to tend buildings owned by the City of New York. They challenge a number of rulings made by the comptroller in a proceeding, pursuant to section 220 of the Labor Law, to fix the " prevailing rate of wages " paid to workmen of " the same trade or occupation " in that city. By a divided court the Appellate Division has sustained the determination of the comptroller, reviewed under article 78 of the Civil Practice Act, holding the challenged rulings justified under the statute.

Upon due complaint the comptroller was obliged to investigate and determine the prevailing rate of wage paid to those workmen whose " trade or occupation " is comparable to appellants' (Labor Law, § 220, subd. 7), and to afford the latter opportunity to be heard on the subject (*id.* subd. 8). His determination rested upon a description of the duties of maintenance men set forth by the municipal civil service commission, as follows: " To assist in the routine maintenance, operation and repair of public buildings, institutions, schools and other plants operated by The City of New York; perform related work."

The findings as to comparable wage rates were derived from surveys of the wages paid maintenance men by a large number of private employers, including the Consolidated Edison Company, New York Telephone Company and National Biscuit Company, as well as firms which operate private apartment houses. The asserted errors fall under three heads.

I. It is contended that the wages of maintenance men performing comparable work for private transportation companies, such as the Fifth Avenue Coach Company, were excluded erroneously from the comptroller's survey. The record indicates that the wages paid maintenance men by private transportation companies were not included in the comparison because those '' firms comprise a separate and noncomparable field of employment — the transit field ''. There is no evidence as to the duties of the private employees, or as to their wages.

The ruling was said to be justified by our decisions in *Matter of Watson* v. *McGoldrick* (286 N. Y. 47) and *Matter of Hoof* v. *McGoldrick* (295 N. Y. 214). In *Matter of Watson* v. *McGoldrick* (*supra*) we held that the comptroller, in a proceeding under section 220, might not refuse to compare the wages of private motor grader operators with those of men performing similar work for the city upon the sole ground that the city's employees had greater economic security through their pension benefits and a larger annual income through more steady employment. '' The statute * * * permits no such differentiation '' (286 N. Y., at p. 53), and the actual wage rates of the two groups must be compared if they are in fact of '' the same trade or occupation ''. However, in remitting the matter to the comptroller, we noted that differences in the actual work performed or in the duration of employment often are reflected in varying union wage scales for similar types of labor. Under such circumstances '' it may become a question of fact whether persons employed to do similar work but in different fields are in fact engaged in the same ' trade or occupation.' '' (P. 55.)

In *Matter of Hoof* v. *McGoldrick* (*supra*) we sustained a determination that the work of letterers employed by New York City was comparable with the duties of a well-defined group of private employees. The categories of the private employees had been established by the union; and the higher wages of two other groups of letterers, whose duties had been found noncomparable, were due to the hazardous character of their work upon outdoor scaffolds. Although there was some evidence that the city's letterers worked upon scaffolds '' occasionally '', the civil service definition of their duties did not include such work, and we could not '' say as a matter of law that the comptroller's determination was arbitrary '' (295 N. Y., at p. 218).

Neither decision supports the ruling here challenged. According the discretion of the comptroller all the deference due to a determination of fact in proceedings under article 78, appellants' contention must be sustained. The record does not disclose the duties of maintenance men employed by private transportation companies. If their work differs substantially from that of appellants, that fact should be critical and not merely the nature of their employers' business. The burden of investigation lies with the comptroller in the first instance (Labor Law, § 220, subd. 7) and his determination should be made upon the facts.

II. The wages of maintenance men employed in private apartment houses were included in the comparison of the comptroller, over appellants' objection, upon the ground that the terms " public buildings, institutions ", in the civil service description of their duties, comprehends such residential buildings as homes for the poor, nurses' residences and hospitals for chronic invalids. Appellants do not squarely contend that the duties of the private employees differ from their own, nor did they offer proof to that effect. In that respect they rely simply on the fact that the comptroller had excluded a description of duties for maintenance men employed by the New York City Housing Authority as immaterial to consideration of the work performed by appellants, none of whom works for the housing authority. We find no inconsistency in those rulings of the comptroller, nor can it be said that private residential employees are necessarily not comparable with the city's maintenance men.

However, another ground of objection to the inclusion of private residential employees has substance. Appellants first had urged before the comptroller that comparative wage figures for the private employees should include the large sums in tips customarily received from tenants, which had induced maintenance men in apartment houses to accept extremely low wages from their employers. The comptroller investigated the subject, could obtain no satisfactory information, and overruled the objection. Appellants then made an effective offer to prove the customary receipt of large amounts in tips by maintenance men in private apartment houses, with the end of demonstrating that those employees should not be included in the comparison, although the precise amount of the tips might not

be determined. The comptroller erred in barring such proof. If permitted, appellants might have shown that the formal wages of private residential employees bear no relation to the character of their work because of the opportunity for large additional income. It is well known that in some occupations an employer need pay only a nominal wage for that reason. If appellants could demonstrate that the formal wages of maintenance men in private apartment houses are wages in name alone, the latter group should not be included in the comparison. The burden lay upon appellants, after the comptroller's fruitless investigation, but they should have been permitted to introduce their evidence.

III. A number of appellants, employed in some of the city's colleges and by the welfare department, have claimed to be doing the work of skilled plumbers, carpenters and other craftsmen, and have asserted that their wages should be comparable to those of other workmen performing similar tasks. Both maintenance men and skilled craftsmen hold competitive positions in the city's civil service. We indicated clearly in *Bressler* v. *Board of Higher Educ. of City of N. Y.* (298 N. Y. 112, 116–117) that a civil service employee performing the tasks of a higher competitive class could not procure an appointment to that class without examination and appointment. The same considerations obtain here. A worker who has been employed as a maintenance man, and is engaged in the duties of a skilled craftsman, cannot find his remedy in section 220. If the comptroller and the courts were to determine his qualifications for the higher salary, as well as the nature of his duties, a conflict with the purpose of the civil service laws would be inevitable. In proceedings of this nature the civil service description of an employee's duties must be determinative.

In each proceeding: The order of the Appellate Division should be reversed and the determination of the comptroller annulled, with costs in this court and in the Appellate Division, and the matter remitted to the comptroller for further proceedings not inconsistent with this opinion.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FULD, JJ., concur.

Order reversed, etc.