Scileppi, J.
The petitioners, laborers employed by the City of New York, have duly filed verified complaints pursuant to the Labor Law (§ 220, subd. 7), in order to have their wages fixed by the fiscal officer (the Comptroller), according to the prevailing rate of wages. Five groups of petitioners sought the same relief and all the proceedings were consolidated by order of the Supreme Court, New York County.
After a hearing before the Comptroller, he determined that the laborers should be subclassified into the following groups:
*107 “ Group ‘ A ’ Laborers (duties and responsibilities)
“To do common laboring work exclusively which requires little skill or training but for which physical strong [sic] is essential.
“ Group ‘ B ’ Laborers (special services)
“ Laborers who, by assignment, are acttially and directly engaged in the operation of fork-lift equipment, specifically assigned to and assisting skilled craftsmen on the' work performed by such craftsmen; maintenance and repair of bridge structure, understructures and catch-basin operations; repair gutter brooms; warehouse operations, in connection therewith, loading and unloading of heavy equipment and materials at platforms for moving vans and trucks; sewage disposal operations and bilge cleaning; sewage treatment operations; electric ferry bridge operators; coal passers.
“ Group ‘ G ’ Laborers (highway maintenance)
* ‘ Laborers, who, by assignment, are engaged in connection with the maintenance and repair of road surfaces of all kinds, including surfaces, on bridges; break road surfaces manually or with compressors; excavate or refill; assist in shoring and sheeting of excavations, if necessary; lay foundations for the repair of road surfaces; mix concrete; assist in the laying of curbs, culverts, catch basins; patch road depressions with tar; oil surfaces of unpaved roads; load and unload material, equipment and encumbrances; mud-jack operations; actual manufacture of synthetic top soil for reclamation purposes involving excrements; perform related work.
“ Group ‘ D ’ Laborers (Water repair services)
“ Laborers who, by assignment, are engaged in connection with the repair of water mains; break and repair leaking water services; break road surfaces manually or with compressors; excavate or refill; assist in shoring and sheeting of excavations; assist in the removal and replacement of defective gate boxes; broken water mains, broken hydrant and water boxes and heads; assist in the removal and replacement of wet connections and taps; load and unload material and equipment of all descriptions; perform related work.
*108 “ Group ‘ E ’ Laborers (sewers)
“Laborers who, by assignment, are engaged in connection with the maintenance and repair of the sewer system; break road surfaces manually or with compressors; excavate and refill; assist in shoring and sheeting of excavations, mix concrete; assist in the removal and replacement of broken sewers (pipe or brick); castings and heads; assist in the repair of sewer interiors of all kinds; flush, clean and excavate culverts; drains or sewer basins; load and unload materials of all descriptions; perform related work.”
The Group A Laborers received a ‘ ‘ prevailing rate ’ ’ fixed by the Comptroller. In addition to this omnibus rate he ‘ ‘ recommended ’ ’ a differential or additional hourly rate of $.09 for Group B Laborers, $.16 for Group C and D Laborers, and $.18 for Group E Laborers. Thus he recognized that the different duties performed by the specific “ Groups ” merited a different remuneration. The categories A through E do not represent civil service job descriptions or classifications, but were merely used for the purposes of payment of differentials.
In establishing the “ prevailing rate ”, the Comptroller indicated that he considered the rates of all laborers in outside employment, regardless of the actual work in which they were engaged. He then fixed an average prevailing rate to be applied to all laborers employed by the city, regardless of the subject matter of the work to which a particular individual was assigned. The petitioners, members of the C, D and E Groups, contend that a separate rate should have been computed for each group, based upon rates paid to corresponding separate groups of laborers who performed similar tasks in outside employment. In response, the city argues that, since there is only one civil service category of “ Laborer ”, it was proper to fix a single rate. In other words, it urges that the job description, not the ■particular work performed, is controlling.
The following statutory provisions are pertinent:
“ 3. The wages to be paid for a legal day’s work, as herein-before defined, to laborers, workmen or mechanics upon such public works, shall be not less than the prevailing rate of wages as hereinafter defined ” (Labor Law, § 220, su-bd. 3).
*109 “ 5. Definitions, a. The ‘ prevailing rate of wage,’ for the intents and purposes of this article, shall be the rate of wage paid in the locality as hereinafter defined to the majority of workmen, laborers or mechanics in the same trade or occupation ” (Labor Law, § 220, subd. 5; emphasis added).
The threshold question is whether the Comptroller, in fixing prevailing rates of wages for laborers under section 220, must fix separate rates commensurate with the work actually performed within the civil service title. This, in turn, revolves around the key inquiry: are sewer laborers, highway maintenance laborers, water repair laborers, etc., all engaged in ‘ ‘ the same trade or occupation ” (Labor Law, § 220, subd. 5)!
Since all the laborers are performing tasks within their civil service title, those cases concerned with the impropriety of paying workers for out of title labor are not authority here (see, e.g., Matter of Flannery v. Joseph, 300 N. Y. 149; Matter of Hoof v. McGoldrick, 295 N. Y. 214). Likewise, cases concerned with the issue of inclusion within section 220 are inapplicable (see, e.g., Matter of Caruso v. Beame, 14 N Y 2d 819).
In Matter of Watson v. McGoldrick (286 N. Y. 47), speaking through Lehman, Ch. J., we said (p. 54) : “ the Comptroller, in determining the prevailing rates of pay which must be applied in accordance with the statute, may, at times must, recognize that difference in the field in which work is performed — the nature of the activities of the employer — divides workers performing similar work into different ‘ trades and occupations ’ within the meaning of the statute.”
Thus it is clearly recognized that individuals, although in the same generic employment, may not be in the same “ trade or occupation”. The pivotal question is the nature of the work actually performed (see Matter of Flannery v. Joseph, supra) which leads to the factual determination of whether persons employed to do similar work but in different fields are engaged in the same “trade or occupation” (Matter of Flannery v. Joseph, supra, p. 153, citing Matter of Watson v. McGoldrick, 286 N. Y. 47, 55). Here the Comptroller unquestionably recognized a distinction in duties of the various laborers by classifying them “ into groups depending upon the nature of their assignments ”, and by establishing a wage differential for such groups.
*110 Although the Comptroller states iu his Report and Findings that “ the assignments and the particular duties required are fortuitous ”, there is no indication in the record that the laborers are frequently shifted from department to department. In fact, a random sampling of laborers indicates that there is little, if any, shifting of duties.
The question here presented is novel in the courts but has been considered by the State Comptroller who has concluded that: ‘ ‘ All laborers employed by a village must be paid at least the prevailing rate of wage in the locality for the particular type of work they are performing.” (10 Ops. St. Comp., 1954, pp. 408, 409; emphasis supplied.) This language certainly indicates that the State Comptroller maintains that laborers in different fields are in.different trades or occupations, depending on the particular work performed.
In addition, a reading of the statute discloses a basic underlying policy that those persons who are employed on public works should receive the prevailing rate of wage that those doing the same work on nonpublic works receive. This is an attempt to insure that persons working on public works are not “ penalized ” by receiving a lower wage than those working on the outside.
The respondent urges that this is essentially an attack on the civil service classification, and, as such, must fail for omitting to join the Civil Service Commissioner. In other words, respondent maintains that a prevailing rate proceeding is not the vehicle by means of which a civil service classification may be challenged. This position is untenable because the complainants do not challenge their inclusion in the classification of “ Laborer ”, rather they merely assert that, although all laborers have the same prerequisites, those doing different tasks on the outside are paid different wages.
Therefore, we hold that the Comptroller must fix and pay prevailing rates of wages based on the work actually performed within the civil service title.
Under this disposition of the case, we do not consider other alleged errors raised by the Rossi appellants.
The order of the Appellate Division should be reversed and the matter remitted to the Comptroller for further proceedings *111 not inconsistent with this opinion, with costs in this court and in the Appellate Division.
Chief Judge Desmond and Judges Dye, Fund, Van Voobhis, Burke and Bergan concur.
Order reversed, etc.