[844 NE2d 276, 810 NYS2d 729]

In the Matter of MARKE LANTRY, Doing Business as THOROUGH JOB ARCHITECTURAL CONSTRUCTION SYSTEMS, Appellant, v STATE OF NEW YORK et al., Respondents.

Argued November 15, 2005; decided December 15, 2005

**POINTS OF COUNSEL**

*Hancock & Estabrook, LLP,* Syracuse (*Stewart F. Hancock, Jr., Alan J. Pierce* and *Sonya G. Bonneau* of counsel), for appellant. I. The Appellate Division's judgment should be reversed because it is predicated on and erroneously confirms the Commissioner of Labor's misapplication of the 1983 amendments to Labor Law § 220. (*Matter of Kelly v Beame,* 15 NY2d 103; *Matter of Marangos Constr. Corp. v New York State Dept. of Labor,* 216 AD2d 758; *Matter of Liquid Asphalt Distribs. Assn. v Roberts,* 116 AD2d 295; *Matter of Otis E. Serv. v Hudacs,* 185 AD2d 483; *Matter of Sierra Telcom Servs. v Hartnett,* 174 AD2d 279; *Matter of New York Tel. Co. v New York State Dept. of Labor,* 272 AD2d 741.) II. The Appellate Division erred in failing to vacate the Commissioner of Labor's determination and order, which overrules existing precedent and adopts a new rule without valid reason. (*Matter of Marangos Constr. Corp. v New York State Dept. of Labor,* 216 AD2d 758; *Matter of Kelly v Beame,* 15 NY2d 103; *Matter of Charles A. Field Delivery Serv. [Roberts],* 66 NY2d 516.) III. The Appellate Division should have vacated the determination and order because it fails to set forth a definite, understandable rule capable of being applied in future trade classifications and that can be subject to effective judicial review. (*Matter of Marangos Constr. Corp. v New York State Dept. of Labor,* 216 AD2d 758; *People v Cull,* 10 NY2d 123; *Matter of Law Enforcement Officers Union, Dist. Council 82, AF-SCME, AFL-CIO v State of New York,* 229 AD2d 286; *Lehigh Portland Cement Co. v New York State Dept. of Envtl. Conservation,* 87 NY2d 136; *Matter of Nicholas v Kahn,* 47 NY2d 24; *Matter of General Elec. Co. v New York State Dept. of Labor,* 154 AD2d 117, 76 NY2d 946.) IV. The Department of Labor's "intrinsic nature of the work" rule for trade classifications under Labor Law § 220 was adopted in violation of the State Administrative Procedure Act and the State Constitution. (*Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health,* 109 AD2d 140, 66 NY2d 948; *Matter of Cordero v Corbisiero,* 80 NY2d 771; *Matter of Schwartfigure v Hartnett,* 83 NY2d 296; *Matter of Alca Indus. v Delaney,* 92 NY2d 775; *People*

*v Cull,* 10 NY2d 123; *Yaretsky v Blum,* 453 F Supp 653; *Matter of General Elec. Co. v New York State Dept. of Labor,* 154 AD2d 117; *Matter of Sunrise Manor Nursing Home v Axelrod,* 135 AD2d 293; *Matter of Maher v New York State Div. of Hous. & Community Renewal,* 158 Misc 2d 826.)

*Eliot Spitzer, Attorney General,* New York City (*Benjamin Gutman, Daniel Smirlock, M. Patricia Smith, Patrick Barnett-Mulligan* and *Pico Paul Ben-Amotz* of counsel), for respondents. I. The Commissioner of Labor rationally relied on the nature of the work rather than surveys in determining that installing preglazed windows is ironwork, not glaziers' work. (*Matter of General Elec. Co. v New York State Dept. of Labor,* 154 AD2d 117, 76 NY2d 946; *Matter of Chesterfield Assoc. v New York State Dept. of Labor,* 4 NY3d 597; *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451; *Matter of Kelly v Beame,* 15 NY2d 103.) II. The flawed decision in *Matter of Cortland Glass* does not render the Commissioner of Labor's determination in this case irrational. (*Matter of Tap Elec. Contr. Serv. v Roberts,* 104 AD2d 548; *Matter of Otis E. Serv. v Hudacs,* 185 AD2d 483; *Matter of Sierra Telcom Servs. v Hartnett,* 174 AD2d 279; *Matter of Naftilos Painting & Sandblasting v Hartnett,* 173 AD2d 964; *Matter of Marangos Constr. Corp. v New York State Dept. of Labor,* 216 AD2d 758; *Matter of Currier [Woodlawn Cemetery],* 300 NY 162; *Sam & Mary Hous. Corp. v Jo/Sal Mkt.Corp.,* 100 AD2d 901, 64 NY2d 1107; *Matter of New York Tel. Co. v New York State Dept. of Labor,* 272 AD2d 741; *Matter of International Assn. of Bridge, Structural & Ornamental Iron Workers, Local Union No. 6, AFL-CIO v State of New York,* 280 AD2d 713; *Matter of Charles A. Field Delivery Serv. [Roberts],* 66 NY2d 516.) III. The Commissioner of Labor's assessment of the nature of the work is subject to effective, if limited, judicial review. (*Matter of General Elec. Co. v New York State Dept. of Labor,* 154 AD2d 117; *Matter of Nicholas v Kahn,* 47 NY2d 24; *Matter of Nehorayoff v Mills,* 95 NY2d 671.) IV. The Commissioner of Labor's classification principles are not rules subject to the State Administrative Procedure Act. (*Matter of New York City Tr. Auth. v New York State Dept. of Labor,* 88 NY2d 225; *Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health,* 66 NY2d 948; *Matter of General Elec. Co. v New York State Dept. of Labor,* 154 AD2d 117; *Matter of Schwartfigure v Hartnett,* 83 NY2d 296.)

GRAFFEO, J.

In this CPLR article 78 proceeding, a contractor challenges the methodology used by the Department of Labor to classify work for purposes of determining the appropriate prevailing wage rate to pay workers on public projects, arguing that the Department erred because it did not consider survey evidence of local contractor practices in making a trade classification. We hold that the Department need not conduct such surveys in order to classify work and conclude that the Commissioner's determination was neither arbitrary nor capricious.

Petitioner Marke Lantry, doing business as Thorough Job Architectural Construction Systems, subcontracted to install preglazed windows for the Ichabod Crane Central School District in Columbia County in 1997. Lantry paid his employees (who were not represented by a trade union) the glaziers' wage rate for their labor on the project. The Department's Bureau of Public Work conducted a random audit of the project and concluded that Lantry had underpaid some of his employees. With respect to the workers engaged in window installation, the Bureau asserted that they should have been compensated at the higher rate of pay for ironworkers.[1] The Bureau assessed Lantry with an underpayment of approximately $5,400 and directed the school district to withhold certain payments from him.

Lantry responded by requesting a hearing to contest the Bureau's findings. Presuming that the Department would use a "prevailing practice in the locality" approach, which relies on surveys of local contractors to determine the trade classification of workers for wage rate purposes, Lantry sought to establish that the prevalent practice in the Capital District area was for contractors to pay their employees installing preglazed windows at the glaziers' rate, rather than the ironworkers' rate.

At the hearing, the Department's principal witness was the senior public work wage investigator, who had audited Lantry's project. He testified that in classifying a particular task into the appropriate trade or occupation, the Department generally analyzes the specific nature of the work, together with collective bargaining agreements, jurisdictional agreements and past Bureau recognition. In his 16 years as a Department investiga-

---

1. The Bureau also determined that other work compensated at the glaziers' rate should have been paid at the rate for masons, laborers or carpenters. Lantry did not challenge these findings.

tor, he indicated that he never examined the "prevailing practice" in a locale or elicited survey-type information from contractors. The witness explained that he classified the work done by Lantry's employees as ironwork after considering several factors, including the nature of the task and an agreement between ironworkers and carpenters indicating that ironworkers retained jurisdiction over the installation of metal window frames into masonry.[2] The Department also presented testimony that revealed that the glaziers' union had a minimal presence in the Capital District area in the mid-to-late 1990s.

In contesting the Bureau's determination that the window installation work should have been classified as ironwork, Lantry submitted the testimony of various union and nonunion glazier contractors who claimed to have consistently treated the installation of preglazed windows as glaziers' work and had paid the glaziers' rate for such labor.[3] A market research consultant who had been hired by the New York State Glass Association to survey the scope of work undertaken by glazier contractors also testified. Based on statistical evidence developed from this survey, he stated that most of these contractors used glaziers to install preglazed windows, although some employed ironworkers or carpenters for such tasks.

After the administrative hearing, the hearing officer issued a report and recommendation accepting the Bureau's ironwork classification and finding of underpayment.[4] Recognizing that the Department could rely on collective bargaining agreements in making classification determinations, the hearing officer noted that in this case the relevant agreements for glaziers and

2. The record indicates that, before preglazed windows were developed, an ironworker would first attach a metal frame to the building's masonry walls with metal clips and screws, after which a glazier would affix the glass to the frame. Preglazed windows have the window glass installed at the factory thereby eliminating glass installation at the job site. As Lantry testified at the hearing, installation of a preglazed window now involves the attachment of the metal frame containing the window glass to the building's masonry.

3. The nonunion contractors testified that they paid the glaziers' rate when working on public projects. They typically paid lower wages when performing similar work in the private sector.

4. The hearing officer also concluded that Lantry's failure to pay the prevailing wage and supplements was willful based on his failure to pay carpenters' rates for ceiling tile work and laborers' rates for washing and cleaning tasks. As a result of this finding of willful conduct, the hearing officer recommended that the Commissioner impose a civil penalty in the amount of 5% of the underpayment. The total amount withheld was $15,599.68, representing wages, supplements, interest and penalties.

ironworkers both claimed jurisdiction over preglazed window installation. He therefore needed to examine other indices that the Department historically relied on to classify work, such as the nature of the work and pertinent jurisdictional agreements. The hearing officer accorded Lantry's survey evidence little weight, believing that the classification of work should not be dictated by statistics.

The Commissioner subsequently issued a determination and order adopting the hearing officer's findings of fact, conclusions of law and recommendations in their entirety. Lantry commenced this article 78 proceeding seeking to vacate the Commissioner's order. The Appellate Division confirmed the determination. We granted Lantry leave to appeal and now affirm.

Labor Law § 220 implements the constitutional mandate that contractors engaged in public projects pay their workers wages and supplements which "shall be not less than the prevailing rate for a day's work in the same trade or occupation in the locality within the state where such public work . . . is performed" (Labor Law § 220 [3]; *see also* NY Const, art I, § 17). The Commissioner is responsible for determining the prevailing wage rates for the various trades in each locality (*see* Labor Law § 220 [3]).[5] Calculation of the prevailing rate entails a two-step process. First, the Commissioner must classify the work by assigning the task performed by an employee to a specific trade or occupation (*see* Labor Law § 220 [3-a] [a]). Second, the Commissioner must ascertain the prevailing rate for that trade or occupation in the relevant locality (*see* Labor Law § 220 [3], [5] [a]).

In the early 1980s, the Commissioner fixed prevailing wage rates by performing industry surveys of the actual wages received by trade workers in each of the state's localities (*see Matter of Liquid Asphalt Distribs. Assn. v Roberts*, 116 AD2d 295, 296 [3d Dept 1986]; *see also* Labor Law former § 220 [5]). This process, which required the Department to survey over 1,500 localities, was costly and burdensome and the Department's experience demonstrated that the prevailing wage rates that were adopted would invariably equate to collectively bargained wages. Thus, the Legislature amended the Labor Law in 1983 to authorize the Commissioner to dispense with the survey process and instead adopt the rate paid in a locality by

---

**5.** The Comptroller of the City of New York has the same responsibility within the city (*see* Labor Law § 220 [3], [5] [e]).

referring to collective bargaining agreements between labor organizations and private sector employers, provided that such agreements covered at least 30% of the workers in that trade or occupation (*see* Labor Law § 220 [5] [a], [c]; *see also* L 1983, ch 447).

Nothing in section 220 of the Labor Law mandates that the Commissioner consider actual contractor practices in a locality when classifying work. To the contrary, while the statute provides a specific process for calculating the "prevailing rate of wage" (*see* Labor Law § 220 [5] [a]), it does not require a specific procedure for the Commissioner to use in evaluating the appropriate trade or occupation to assign to particular work.

Lantry argues that the Commissioner's classification of the work involved in installing preglazed windows into masonry as ironwork rather than glazier work was arbitrary and capricious. Specifically, Lantry contends that a "prevailing practice in the locality" test, based on industry survey information and contractor testimony regarding what type of workers are actually performing the task in dispute, should be the standard the Commissioner follows to classify work. Hence, Lantry asserts that the Commissioner erred in failing to credit the survey data and the testimony of the contractors that he claims confirmed that glaziers do more preglazed window installation jobs than ironworkers. We disagree.

In the absence of a statutory directive, this Court will uphold the Commissioner's methodology as long as it is not unreasonable (*see Matter of Chesterfield Assoc. v New York State Dept. of Labor*, 4 NY3d 597, 604 [2005]). Furthermore, it is well settled that trade classifications "are a matter given to the expertise of the Department and courts are strongly disinclined to disturb them, absent a clear showing that a classification does not reflect 'the nature of the work actually performed' " (*Matter of General Elec. Co. v New York State Dept. of Labor*, 154 AD2d 117, 120 [3d Dept 1990], *affd for reasons stated below* 76 NY2d 946 [1990] [citations omitted], quoting *Matter of Kelly v Beame*, 15 NY2d 103, 109 [1965]).

Here, the Commissioner outlined the analysis that the Department generally follows in classifying work. Although a number of factors may be relevant, where a union has obtained jurisdiction over a certain category of work through the collective bargaining process, the Department will typically adopt the classification assigned in the collective bargaining agreement.

But where a dispute arises between two unions that each claim jurisdiction over the same type of work, the Department necessarily expands its review to encompass other factors, such as jurisdictional agreements, past precedent, and the inherent nature and characteristics of the work in question. In neither scenario, the Commissioner observed, would the Department rely on "a survey or comparison of sheer numbers to determine the appropriate classification of work."[6]

Courts have consistently held that the Commissioner may rely on collective bargaining agreements in making trade classifications (*see e.g. Matter of Otis E. Serv. v Hudacs*, 185 AD2d 483, 485 [3d Dept 1992]; *Matter of Sierra Telcom Servs. v Hartnett*, 174 AD2d 279, 283 [3d Dept 1992], *appeal dismissed* 79 NY2d 1039 [1992], *lv denied* 80 NY2d 757 [1992], *cert denied* 507 US 972 [1993]; *Matter of Naftilos Painting & Sandblasting v Hartnett*, 173 AD2d 964, 966 [3d Dept 1991]). The Commissioner's use of collective bargaining agreements to classify work is consistent with the 1983 amendments to section 220 of the Labor Law, which authorized the Department to rely on collective bargaining agreements rather than survey data to determine prevailing wage rates and supplements. Although those amendments did not specifically address the Commissioner's classification prerogative, they evince a recognition by the Legislature of the administrative burden of compiling and updating surveys and therefore support the Commissioner's conclusion that the survey approach urged by Lantry is impractical.

Likewise, we do not find the Commissioner's consideration of other factors, including the nature and characteristics of the work at issue—to the exclusion of survey evidence of contractor practices—to be irrational. Although underpayments sometimes occur, necessitating reimbursement of workers after the fact, the Department's mission is to ensure that workers are paid the correct wage in the first instance. Thus, the Department and contractors need to know the trade classification for an item of work before commencement of a public project so that the appropriate prevailing rate of wages and supplements can be

---

**6.** The Commissioner does suggest in her brief, however, that empirical evidence may be relevant where "[h]istorical data that correlate with changes in the work process [establish] that the nature of the work (and therefore the trade classification) has evolved over time." The Commissioner also indicates that numerical data could conceivably be relevant to show that a particular trade does not perform any of the work in question.

ascertained and workers compensated accordingly. It would be difficult for the Commissioner to classify work in a timely manner if she had to depend on survey data of local practices with respect to each of the more than 100 trades in the construction industry.[7] Additionally, the Commissioner's emphasis on examining the nature of the work for trade or occupation classification is reasonable given this Court's pronouncement that the nature of the work performed is "[t]he pivotal question" in reviewing the Department's trade classifications (*Matter of Kelly v Beame*, 15 NY2d 103, 109 [1965]). In sum, contrary to Lantry's position, the Department need not compile survey evidence to determine the appropriate trade classification for a particular type of work.[8]

In this case, both the applicable glaziers' and ironworkers' collective bargaining agreements claimed jurisdiction over the installation of preglazed windows. The Commissioner therefore looked to other factors to classify the task. Primarily, the Commissioner relied on evidence of the process of installing preglazed windows into masonry openings, which involves the attachment of aluminum clips to each window with fastener screws, noting that no glazing was necessary because the window manufacturer already performed that function. The Commissioner also considered the jurisdictional agreement be-

7. The dissent indicates that the issue in this case is whether the Commissioner must rely on prevailing practice to classify work, not whether the Department has to conduct surveys. But if prevailing practice is the standard, survey evidence seems unavoidable. In any given case, a contractor could selectively bring in a cadre of witnesses who would testify favorably for the contractor. In fact, Lantry testified at the hearing in *Matter of Cortland Glass Co.* (PRC Nos. 94-8074A, 95-0790 [Jan. 10, 2000]), a case involving a similar issue, and the contractor charged in *Cortland Glass* testified at Lantry's hearing in this case. Accurate determination of prevailing practice—particularly where two unions claim jurisdiction over the same task—would therefore necessitate extensive surveying, a burden the Commissioner reasonably seeks to avoid.

8. Lantry's approach would also be unworkable because the Commissioner must classify the work in order to determine the pertinent locality. This is because the Labor Law now defines "[l]ocality" as "such areas of the state described and defined for a trade or occupation in the current collective bargaining agreements between bona fide labor organizations and employers of the private sector, performing public and private work" (Labor Law § 220 [5] [d]). Because a trade classification determines the relevant collective bargaining agreement governing a wage rate, the locality cannot be ascertained until after the Commissioner classifies the work. To do as Lantry suggests would require the Department to survey a geographical area before it knows the locality—the territorial scope of the relevant collective bargaining agreement.

tween carpenters and ironworkers, under which the ironworkers claimed jurisdiction over the installation of metal window frames into masonry, as well as evidence that the local glaziers' union had little presence in the region in the 1990s. The Commissioner had the discretion to weigh this evidence more heavily than that proffered by Lantry, which consisted largely of testimony and survey data indicating that glazier contractors considered preglazed window installation to be glaziers' work.[9] According the Commissioner deference based on her expertise in this area, we cannot say that her classification of the task at issue as ironwork was arbitrary or capricious or inconsistent with the nature of the work.

Nevertheless, Lantry urges that the Commissioner's determination cannot be sustained because a prior determination of the Department directly conflicts with the result reached in this case. Lantry cites *Matter of Cortland Glass Co.* (PRC Nos. 94-8074A, 95-0790 [Jan. 10, 2000]), in which an Erie County contractor was charged with underpaying its employees at the glaziers' rate rather than the ironworkers' rate where they had installed preglazed windows on a public work project. After a hearing, the Department held that no underpayment occurred, concluding that the contractor properly used the glaziers' rate. The Department relied heavily on evidence indicating that the actual practice undertaken by contractors in the region was to classify such work as glaziers' work. Lantry submits that the *Cortland Glass* determination should inform the result in his case.

It is well settled that "[a] decision of an administrative agency which neither adheres to its own prior precedent nor indicates its reason for reaching a different result on essentially the same facts is arbitrary and capricious" (*Matter of Charles A. Field Delivery Serv. [Roberts]*, 66 NY2d 516, 517 [1985]). Here, however, the Commissioner acknowledged that the *Cortland Glass* decision was inconsistent with the current determination

**9.** The dissent states that Lantry presented survey data demonstrating that glaziers performed 94% of preglazed window installation in eastern New York. But that survey collected information exclusively from glazing companies and indicated that 94% of glazier contractors considered such work to be glaziers' work. The survey did not contemplate contractors who considered themselves to be ironwork firms or who were signatories to the ironworkers' collective bargaining agreement. If, hypothetically, a survey of such companies similarly indicated that a vast majority considered the identical task to be ironwork, under a prevailing practice test, the inquiry would devolve into an analysis of which contractors actually installed more windows.

and set forth her reasons for declining to follow its rationale and conclusion. The Commissioner explained that actual practice evidence is generally not relevant to the process of classifying work, overruling *Cortland Glass*, to the extent it held otherwise, as flawed and a departure from longstanding departmental precedent.[10] We conclude that the Commissioner satisfied her obligation under *Field Delivery*.

Lantry's remaining contentions are without merit.

Accordingly, the judgment of the Appellate Division should be affirmed, with costs.

R.S. SMITH, J. (dissenting). The issue here is not whether the Department of Labor must conduct a survey every time it classifies work for purposes of the prevailing wage requirements. No one says that it must. Nor is the question whether the Department may consider collective bargaining agreements in classifying work. Of course it may. The question is whether the Department may classify work on some basis other than the "prevailing practice," or custom, as to which workers actually perform the work in question.

I am unable to discern any coherent or comprehensible alternative to the "prevailing practice" approach that the Department has long followed. The Department says that it is free to substitute what it calls the "nature of the work" test, but that test seems to me devoid of meaningful content. Thus, in sanctioning the Department's departure from the prevailing practice test, I think the majority opens the door to arbitrary decision-making.

In this case, the Department of Labor has required petitioner to pay ironworkers' wages for the installation of preglazed windows, despite overwhelming evidence that this work is customarily performed by glaziers, not ironworkers. The Department's position is that this evidence is irrelevant. The report and recommendation of the hearing officer in this case, which the Commissioner of Labor adopted, found that the Department's own decision in *Matter of Cortland Glass Co.* (PRC Nos. 94-8074A, 95-0790 [Jan. 10, 2000]) was erroneous because it

---

**10.** During the pendency of the appeal in *Cortland Glass*, the Department in its brief to the Appellate Division repudiated the posture the agency had taken in the case and sought a remand for reconsideration (*see Matter of International Assn. of Bridge, Structural & Ornamental Iron Workers, Local Union No. 6, AFL-CIO v State of New York*, 280 AD2d 713 [3d Dept 2001] [dismissing for lack of standing a petition brought by ironworker unions that sought review of *Cortland Glass*]).

"determin[ed] the prevailing practice" rather than applying what the hearing officer called "the intrinsic 'nature of the work' factor" in deciding how to classify the activity in question. The hearing officer quoted a dictionary definition of "intrinsic": "belonging to the essential nature or constitution of a thing."

Thus the Department's decision here rests on the premise that an activity like installing preglazed windows has an "intrinsic" nature that can be determined without reference to what the prevailing practice is. The Department does not explain how the intrinsic nature of a particular kind of work is to be discovered. I would hold that the Department's decision must be set aside, because I do not think it is possible to define the Platonic ideal of either the work of ironworkers or the work of glaziers, without considering what ironworkers and glaziers actually do.

The evidence relied on by the hearing officer in this case neither clarifies what the Department thinks the "nature of the work" test is nor offers any assurance that the test can be rationally or predictably applied. Since he considered prevailing practice irrelevant, the hearing officer discounted all evidence of who actually does the work in question—including a survey presented by petitioner that put the glaziers' share of such work in eastern New York at 94%. The hearing officer consulted collective bargaining agreements, but found that the work in question is claimed by both glaziers and ironworkers and declined to "enter into a jurisdictional dispute between unions." The hearing officer relied instead on an agreement between ironworkers and carpenters, to which the glaziers were not a party, in which the carpenters ceded the installation of preglazed windows to the ironworkers; this is a bit like relying on an agreement between the United States and Mexico to settle a United States-Canada border dispute.

According to the majority, the Department relied "[p]rimarily" on "evidence of the process" by which preglazed windows are installed; the majority mentions that the process involves "aluminum clips" and "fastener screws," and that "no glazing was necessary" (majority op at 57). But the opinion of the Department's hearing officer does not say that he relied "primarily" on this evidence, and neither he nor the majority explains how it supports the conclusion that installation of preglazed windows is intrinsically ironwork.

An attempt to find the intrinsic nature of this work by use of a dictionary will be unproductive. My dictionary defines "glazing" as "the action, process, or trade of fitting windows with glass" (Merriam-Webster's Collegiate Dictionary [10th ed 1993]). The Department, and the majority, apparently infer from the term "preglazed" that glazing occurs when products called windows, consisting of glass and other materials, are manufactured; but why could not the dictionary definition apply equally well to the activity in which products consisting largely of glass are attached to the spaces called windows in a building? And in any event, where is the "ironwork"? Where, for that matter, is the iron? My point here is not to show that the glaziers would win the verbal debate, though perhaps they would; it is to show that this sort of sterile wordplay, divorced from the question of what workers in the real world do, is not a basis for the rational classification of work for purposes of the prevailing wage law.

The Department, and the majority, suggest that the cases support using a "nature of the work" rather than a "prevailing practice" test, but I think this is a misinterpretation of the cases. The decisions that use the term "nature of the work" support the commonsense idea that one must examine the nature of the work in order to determine what the prevailing practice is; they do not suggest that "nature of the work" and "prevailing practice" are alternatives. *Matter of Kelly v Beame* (15 NY2d 103, 109 [1965]) says that "[t]he pivotal question is the nature of the work *actually performed*" (emphasis added)— implying that actual practice is not only relevant, but dispositive (*see also Matter of General Elec. Co. v New York State Dept. of Labor*, 154 AD2d 117, 120 [3d Dept 1990], *affd on op below* 76 NY2d 946 [1990] [nature of the work test satisfied because "work envisaged by the project . . . *is performed* by electricians" (emphasis added)]; *Matter of Otis E. Serv. v Hudacs*, 185 AD2d 483, 485 [3d Dept 1992] [Department's finding "that the workers *did enough work with pipe* to qualify as 'pipe men' " upheld as reflecting "the nature of the work" (emphasis added)]). These cases contradict, rather than support, the Department's theory that it can decide the nature of the work without determining what the prevailing practice is.

The Department, and the majority, also rely on the 1983 amendments to the prevailing wage legislation. These amendments give no support, however, to discarding the prevailing practice test for classification. The amendments relate not to classification of work but to wages and supplements, and provide

generally that the "prevailing rate of wage," and practices with respect to supplements, shall be determined by reference to collective bargaining agreements, subject to certain limitations (*see* Labor Law § 220 [5]). The statute requiring classification of work (Labor Law § 220 [3-a] [a]) was not materially changed in 1983. I believe the 1983 amendments are irrelevant to this case.

This does not mean, of course, that collective bargaining agreements are irrelevant to job classification. It is perfectly reasonable, quite apart from the 1983 amendments, for the Department to examine collective bargaining agreements as evidence of what the prevailing practice with respect to job classification is. But if it wants to ignore prevailing practice, the Department must at least suggest some other rational way of classifying work. It has not done so.

Ultimately, the majority's decision here rests on the rule that we will defer to the judgment of administrative agencies when, with the aid of their expertise, they interpret the legislation it is their duty to implement. I agree that we should defer to the Department if it chose to prefer one means rather than another of determining the prevailing practice—for example, to weigh survey evidence more or less heavily than the evidence of collective bargaining agreements. I would also defer to the Department in its definition of the geographical area within which the prevailing practice is to be determined; the majority may be right in saying that classification must occur before the relevant "locality," within the meaning of the statute, can be identified (majority op at 57 n 8). But to defer to the Department's decision to be guided by the "intrinsic nature of the work" in preference to prevailing practice is to defer to an approach that fundamentally makes no sense. Deference, in this context, is acquiescence in purely arbitrary classification, for there is no way to demonstrate that any decision about the intrinsic nature of a particular piece of work is either right or wrong.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT and READ concur with Judge GRAFFEO; Judge R.S. SMITH dissents and votes to reverse in a separate opinion.

Judgment affirmed, with costs.