■ MICHAEL MULGREW, as President of the United Federation of Teachers, Local 2, et al., Respondents, v BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK et al., Appellants. [906 NYS2d 9]—

Order, Supreme Court, New York County (Joan B. Lobis, J.), entered on or about March 26, 2010, which granted the petition to the extent of declaring that respondents failed to comply with the requirements of Education Law § 2590-h and that the votes of the Panel for Educational Policy (PEP) approving the phaseout or grade truncation of 19 schools were null and void, ordered respondents to reissue the educational impact statements (EISs) for the schools in compliance with Education Law.

§ 2590-h, and permanently enjoined respondents from prohibiting enrollment in the schools until they complied with Education Law § 2590-h, unanimously affirmed, without costs.

Petitioner United Federation of Teachers (UFT), which represents approximately 120,000 educators working in New York City public schools, including 87,000 teachers, has standing to bring this proceeding (through its president) seeking the annulment of respondents' determination to phase out 19 schools on the ground that respondents failed to comply with the pre-phaseout procedures mandated by Education Law § 2590-h. Under the well-established test for associational and organizational standing set forth by the Court of Appeals, the UFT must demonstrate (1) that some or all of its members have standing to sue; (2) that the interests advanced in the case are sufficiently related to the UFT's organizational purposes to satisfy the court that the UFT is an appropriate representative of those interests; and (3) that the participation of the individual members is not required to assert the claim or to afford the UFT complete relief (*Matter of Dental Socy. of State of N.Y. v Carey*, 61 NY2d 330, 332-334 [1984] [recognizing standing of unincorporated association]; *see also New York State Assn. of Nurse Anesthetists v Novello*, 2 NY3d 207, 211 [2004]).[1] The UFT easily satisfies this test as to each of the 19 subject schools. At a minimum, the UFT would derive standing from its chapter leader at each school, given that the chapter leader (or his or her designee) is, pursuant to respondents' regulations, a mandatory member of the institution's school leadership team, the body constituting the "school-based management team" (SBMT) mandated by section 2590-h to participate in the consideration of a proposed phaseout. In addition, those UFT members who are employed at the schools proposed to be phased out have an interest in the matter that would give them standing to sue. Further, the interests involved—school closure and the integrity of the school closure process—are germane to the UFT's organizational purpose, thereby making the union an appropriate representative of those interests. Finally, the participation in the proceeding of all interested individual members of the UFT is not necessary to afford complete relief, since the petition seeks only to nullify the determinations to close the subject schools. Accordingly, based on the UFT's standing to advance the claims as-

1. In view of the Court of Appeals' decision in *Dental Socy. of State of N.Y.* (*supra*), it is apparent that General Associations Law § 12 is not construed to condition an unincorporated association's standing on every individual member's having standing.

serted in the petition, we may proceed to consider the merits of those claims.[2]

Whether the applicable standard of review is strict compliance or substantial compliance, the court properly determined that respondents' EIS for each school failed to comply with the substantive requirements of Education Law § 2590-h (2-a) (b). In particular, each EIS fails to indicate, as required by Education Law § 2590-h (2-a) (b) (i), the "ramifications of such school closing or significant change in school utilization upon the community" and, as required by section 2590-h (2-a) (b) (ii), "the impacts of the proposed school closing or significant change in school utilization to any affected students." Rather, each EIS merely indicates the number of school seats that will be eliminated as a result of the proposed phaseout, and states that the seats will be recovered through the phase-in of other new schools or through available seats in existing schools in the district or city. While the statute does not specify the information that an EIS should include to portray the impact of a proposed phaseout on the community or the students, respondents do not discharge their obligation by providing nothing more than boilerplate information about seat availability. Granting that the statute affords respondents a considerable measure of discretion in this regard, respondents abused that discretion by limiting the information they provided to the obvious—that students at phased-out schools would be accommodated at other schools to be determined. Plainly, the Legislature contemplated that the school community would receive more information than this from the EIS (see Assembly Mem in Support, Bill Jacket, L 2009, ch 345, 2009 McKinney's Session Laws of NY, at 1713 ["This process requires the Chancellor to develop and make public (an EIS) that details the impacts of the proposed school closing or significant change in school utilization"]). Even if each EIS provides adequate information regarding the ability of other schools in the affected community district to accommodate affected students, as required by Education Law § 2590-h (2-a) (b) (vi), it fails to provide adequate information regarding the ramifications of the proposed agency action on the community and the students. The discussion of one point does not obviate the need for a discussion of the other.

The court also properly determined that, in the case of each subject school, respondents failed to "hold a joint public hearing

---

**2.** The determination that the UFT has standing renders it unnecessary to consider the standing of the remaining named petitioners (see *Saratoga County Chamber of Commerce v Pataki,* 100 NY2d 801, 813 [2003], *cert denied* 540 US 1017 [2003]).

with the impacted community council and [SBMT]" as required by Education Law § 2590-h (2-a) (d).[3] As the court found, for the notion of a joint hearing to have any meaning, the members of the community councils and SBMTs must be part of the process of structuring and conducting those hearings. Contrary to respondents' contention, paragraph (d) of subdivision (2-a) requires them to include or consult with the community councils regarding the joint public hearings for all proposed school phaseouts, with no exception for high schools. Respondents were also required to give the community councils notice of the high school hearings. Moreover, the court properly determined that respondents failed to file a copy of each EIS with the impacted SBMT as required by Education Law § 2590-h (2-a) (c).

Based on the foregoing, the court properly annulled the PEP votes (see generally Chinese Staff & Workers Assn. v City of New York, 68 NY2d 359, 369 [1986]). Contrary to respondents' contention, the statutory violations are not "so insignificant as to be totally inconsequential" (cf. Roosevelt Is. Residents Assn. v Roosevelt Is. Operating Corp., 7 Misc 3d 1029[A], 2005 NY Slip Op 50811[U], *14 [2005]). Concur—Friedman, J.P., Nardelli, Moskowitz, Freedman and Manzanet-Daniels, JJ.

---

**3.** For purposes of article 52-A of the Education Law (which includes section 2590-h), "[t]he term 'community council' shall mean the community district education council of a community district established pursuant to section [2590-c] of this article" (Education Law § 2590-a [4]).