OPINION OF THE COURT
Manuel J. Mendez, J.
It is ordered and adjudged that this CPLR article 78 petition is granted, and personnel orders No. 2012/1 and 2012/2 dated April 11, 2012 are annulled.
Respondents’ administrative actions resulted in personnel orders No. 2012/1 and 2012/2 dated April 11, 2012, which approve and result in an amendment to rule X of the Personnel Rules and Regulations of the City of New York (55 RCNY Appendix A). The amendments to rule X reclassify 106 ungraded prevailing rate titles into 14 new occupational titles, with four grade levels within each service classification affecting salaries and benefits. Petitioners, pursuant to Labor Law § 220, engaged in prevailing wage bargaining as ungraded civil service titles. They had entered into consent orders with the Comptroller of the City of New York, which expired prior to the amendment to rule X. Petitioners seek judicial review of the administrative action and to annul personnel orders No. 2012/1 and 2012/2, claiming the determinations were unilateral, arbitrary and capricious, in violation of Labor Law § 220 and the reclassification provisions of Civil Service Law § 20.
An administrative decision will withstand judicial scrutiny if it is supported by substantial evidence, has a rational basis and is not arbitrary and capricious (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222 [1974]). Deference is generally given to an administrative agency’s decision; however, a decision that “runs counter to the clear wording of a statutory provision . . . should not be accorded any weight” (Matter of Metropolitan Movers Assn., Inc. v Liu, 95 AD3d 596, 598 [1st Dept 2012], quoting Roberts v Tishman Speyer Props., L.P., 13 NY3d 270, 285 [2009]).
The legislative intent of Labor Law § 220 is to impose upon the state and municipal corporations the same obligations of paying the prevailing rate of wages to laborers, workmen and mechanics employed in public works in ungraded or noncompetitive employment as private employers (Matter of Gaston v Taylor, 274 NY 359 [1937]). The scope of obligation under Labor *655 Law § 220 is for the state to hold its territorial subdivisions to a standard of social justice for dealing with laborers, workmen and mechanics (Austin v City of New York, 258 NY 113 [1932]). Labor Law § 220 is to be construed “with the liberality needed to carry out its beneficent purposes” (Bucci v Village of Port Chester, 22 NY2d 195, 201 [1968]). Salary based grading of titles is used to establish the type and quality of work performed based on merit and to avoid automatic promotion. Salary fixation is ineffectual where there is no valid classification (Matter of Corrigan v Joseph, 304 NY 172 [1952], rearg denied 304 NY 759 [1952]).
A reclassification of titles is lawful “where it conforms the civil service structure to the situation which actually existed in the operation of the agency prior to the reclassification” (Matter of Joyce v Ortiz, 108 AD2d 158, 163 [1st Dept 1985]). A civil service title may be abolished in good faith based on economy and efficiency, but not as subterfuge for avoiding statutory protections provided to civil servants (Matter of Hartman v Erie 1 BOCES Bd. of Educ., 204 AD2d 1037 [4th Dept 1994]; Matter of Gorman v Von Essen, 294 AD2d 209 [1st Dept 2002]). Reclassification is not to be used as a means of circumventing the constitutional mandates for appointment to a civil service title or validating out of title work (Matter of C.S.E.A. v County of Duchess, 6 AD3d 701 [2d Dept 2004]; Matter of Criscolo v Vagianelis, 50 AD3d 1283 [3d Dept 2008]).
The New York State Constitution, article V, § 6 requires that appointments and promotions made in the civil service be based on merit and fitness, which to the extent it is practicable is to be ascertained by competitive examination. Civil Service Law § 20 (2) requires notice, hearing, and approvals to promote consistency and statewide adherence to the constitutional provisions of article V, § 6 (1998 Ops Atty Gen No. 98-F3 at 4, citing Matter of Klipp v New York State Civ. Serv. Commn., 42 Misc 2d 35 [Sup Ct, Suffolk County 1964], affd 22 AD2d 854 [2d Dept 1964], affd 15 NY2d 880 [1965]). Reclassification can only be accomplished in the manner set forth in Civil Service Law § 20, which requires notice, a hearing, review and approval by the State Civil Service Commission. There is no merit to the contention that the New York City Charter, in conjunction with Civil Service Law § 20 (1), exempts the procedural mandates of Civil Service Law § 20 (2) (Matter of Joyce v Ortiz, 108 AD2d 158 [1985], supra).
Petitioners claim that personnel orders No. 2012/1 and 2012/2 are the result of unilateral actions taken by the respondents to *656 classify ungraded civil service titles which are subject to Labor Law § 220 application of prevailing rate wages and supplemental benefits. Petitioners have engaged in prevailing wage collective bargaining in a manner that has been established for over 100 years, and as part of the bargaining process they entered into consent orders with the City Comptroller. After the most recent consent orders expired, the respondents acted by effectively deleting their classifications and reclassifying the 106 ungraded prevailing rate titles affecting approximately 10,000 employees into 14 new “Maintenance and Operation Services” titles. Personnel orders No. 2012/1 and 2012/2 were adopted and immediately made effective after the Mayor’s signature, altering many of the provisions of the consent orders. Petitioners claim that respondents’ reclassification is arbitrary and capricious because it massively restructures the classification system without any effort to comply with either the provisions of Labor Law § 220 or the requirements of Civil Service Law § 20 (2) regarding notice, public hearings, and approval from the New York State Civil Service Commission.
Respondents oppose the petition claiming that they complied with Civil Service Law § 20 (1) when they allocated titles within a salary grade construct because they did not change a jurisdictional classification. They claim that Civil Service Law § 20 only applies when a title is changed from competitive to noncompetitive or exempt class. Respondents claim that the Department of Citywide Administrative Services (DCAS) has authority to act as a municipal civil service commission pursuant to the New York City Charter, to review salaries and titles, grade and classify them, and remove them from the scope of Labor Law § 220, subject to the Mayor’s approval. Respondents state that the regrading removes the prevailing rate titles from the scope of Labor Law § 220. They claim that the grading of competitive class titles was rational because it is within the City’s managerial prerogative, and therefore notice, public hearings and New York State Civil Service Commission approval are not required.
DCAS conducted an investigation without consulting the Comptroller’s Office, the State Civil Service Commission, or conducting a hearing. DCAS determined that the prevailing rate applicable to petitioners’ titles through negotiations conducted by the Comptroller’s Office resulted in inequitably high salaries, and should be replaced with competitive titles which would then be negotiated through the collective bargaining process *657 under the New York City Collective Bargaining Law (NYCCBL) (Administrative Code of City of NY, tit 12, ch 3). DCAS conceded that some of the positions were seasonal in nature, but determined that because they are filled on “a full time, per annum basis,” the prevailing wage for seasonal work in the private sector was lower (verified answer, exhibit A at 2). DCAS based the new titles on graded salary plans for public sector employees that it determined were similar in the federal and New York metropolitan area.
The DCAS memorandum dated April 3, 2012, under “Subject: Proposal:” states, “In the Competitive Class, Rule X: (1) reclassify all titles under the Skilled Craftsman and Operative Service, Part [038] into one of the following new occupational services” (verified answer, exhibit A). The skilled craftsman and operative service titles were on DCAS’s recommendation reclassified into 14 new “Maintenance and Operation Services” titles, with four grades in each title designated as “(I) helper/entry level, (II) journey-level, (III) supervisor and (IV) supervising supervisor.” Personnel order No. 2012/1 lists the new titles and provides the maximum and minimum allotted salary under each grade. Certain grades within all titles have no stated salary provisions. In the “Press Operation Service Pay Plan” and “Equipment Operation Service Pay Plan,” only the “journey level” grade has a maximum and minimum salary provision; the other grades are listed as “n/a.” (Verified answer, exhibit B.) With the exception of the electrical service pay plan, no salary is listed under “supervising supervisor.” Promotions within the new titles are to the minimum salary range of a graded title or $1,000, whichever is higher.
A review of personnel orders No. 2012/1 and 2012/2 dated April 11, 2012 demonstrates that time and leave have been substantially altered. Employees’ sick day accruals have been halved; terminal leave currently accumulating up to 100 days was modified to 70 days; Lincoln’s Birthday was eliminated as a holiday; election day is only a paid holiday during those years when there is a presidential election; and payment to employees not covered under workers’ compensation has been eliminated along with contributions to the Welfare and Retiree Fund for unionized employees.
In those instances where the maximum range for grades in competitive title salaries is substantially lower, salaries will not be recovered on merit. Some examples of drastic change in salary from consent orders are, a boilermaker supervisor currently *658 earning approximately $114,587.20 will have a range of $85,000 to $105,000; a blacksmith supervisor earning approximately $114,587.20 will have a range of $98,000 to $114,000. The maximum ranges provided under the new titles and grades amount to demotions. It provides no basis for employees under those titles to compete for titles based on fitness while employed in the public sector. Across most titles the minimum salary rate applied in the grades is less than current salary but the maximum range is higher. Petitioners have not been provided a means of determining the manner in which they will be able to acquire the maximum range for each grade. Individuals that have acquired licenses and seniority in a title that has been reclassified have no means of determining the manner of promotion.
As of the April 11, 2012 effective date, incumbent employees are permitted to maintain the status quo concerning salaries, time, and leave but newly hired employees in the revised titles are immediately affected by the changes. The status quo for incumbent employees is subject to alteration when collective bargaining negotiations are conducted pursuant to NYCCBL procedures. Incumbent employees that have accumulated salary, time and leave under their consent orders will not get to keep those accruals. They will be required to accept lower salaries based on the ranges in the grade for their job titles and bargain for increases under new collective bargaining contracts.
Salary, time and leave accrued under consent orders have been removed and unilaterally altered by the respondents without any notice, hearing or determination by the New York State Civil Service Commission. The consent orders were valid based on hearings, investigations and negotiations between the Comptroller and representative unions that evaluated prevailing wages in both the private and public sector. The revisions to and removal of salary, time and leave affecting both new and incumbent employees without notice, hearing or a determination confirming the adherence to statewide standards of merit and fitness have no rational basis. Petitioners have been placed in a position of trying to obtain accrued salary, time and benefits without being afforded the statutory protections of civil servants. Respondents’ reclassification does not have a rational basis and is arbitrary and capricious.
Upon review of all the papers submitted, this court finds that the changes proposed and implemented by the respondents resulted in not just grading but reclassification of job titles subject to the provisions of Civil Service Law § 20.
*659 Accordingly, it is ordered and adjudged that the petition is granted and personnel orders No. 2012/1 and 2012/2 dated April 11, 2012 are annulled.